IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| DENNIS A. WENDT, | ) ) | CASE NO. 05-44958-H3-7 |
| Debtor, | ) ) | |
| SHARON ANDERSON, | ) ) | |
| Plaintiff, v. | ) ) ) | ADV. NO. 05-3941 |
| DENNIS A. WENDT, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

The court has held a trial in the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Sharon Anderson ("Plaintiff") and Dennis A. Wendt ("Defendant") were divorced from each other, by a divorce decree entered October 9, 1995.

The divorce decree provided, <u>inter alia</u>, that Defendant was to pay alimony to Plaintiff in the amount of $617,700,

payable in escalating monthly installments over the course of 160 months.  Both Plaintiff and Defendant are veterinarians.  In the divorce, a veterinary business operated by Pet Care, Inc., a Texas corporation, was awarded to Defendant.  (Plaintiff's Exhibit 1).

During May, 2004, Defendant suffered a stroke.  Defendant testified that, after the stroke, he was unable to perform surgery, and was unable to speak.  Defendant's present wife, Patricia Wendt, testified that Defendant was paralyzed on one side of his body.

Defendant testified that, during October, 2004, he met with Plaintiff.  He testified that he either sought to sell the Pet Care clinic to Plaintiff, or sought to negotiate a payoff figure for his alimony obligation to Plaintiff.

Defendant testified that he was attempting to sell Pet Care, Inc., in order to pay his alimony obligation.  He testified that the value he believed he could get for Pet Care was tied to its gross revenue.  He testified that, because he was unable to generate revenue by performing surgery, he sought other sources of revenue for Pet Care.

Defendant testified that, beginning in late 2004, Pet Care began purchasing a non-prescription flea and tick medication from Mariel Limited.  He testified that he purchased far more medication than he could use in his veterinary businesses, so

that he could resell the medication, which was labeled for sale only to veterinarians, to a non-veterinarian third party.

Beginning in March, 2005, Pet Care bought more than $100,000 per month in medication from Mariel. After paying for a portion of the March, 2005 shipment, Pet Care entered into a deferred billing arrangement with Mariel for later shipments.

During May, 2005, Defendant had a telephone conversation with J. Neal Anderson,[1] the attorney who had represented Defendant and Plaintiff when they filed a joint Chapter 7 bankruptcy case in 1989. Anderson testified that, during the phone conversation, Defendant discussed with him the question of whether the alimony obligation would be dischargeable in bankruptcy.

On May 17, 2005, Plaintiff, through her attorney, Linda Hinds, notified Defendant that he was in default of his alimony obligation. (Plaintiff's Exhibit 54).

After Plaintiff gave Defendant the notice of default, Defendant hired an attorney, Thomas E. Reder, to represent him with respect to the alimony obligation. Defendant testified that he initially hired Reder to negotiate a delay in Plaintiff's exercise of her remedies under the divorce decree, and later expanded the engagement to ask Reder to negotiate a final

---

[1] J. Neal Anderson is not related to Sharon Anderson. In this opinion, Sharon Anderson is referred to as "Plaintiff." References to "Anderson" refer to J. Neal Anderson.

3

settlement of the alimony obligation.

Defendant testified that he did not notify Reder that he was consulting Anderson regarding the filing of a bankruptcy case, and did not notify Anderson that he had hired Reder to negotiate a settlement of the alimony obligation.

Defendant testified that, when Pet Care made the sales of the Mariel medication to the third party, Pet Care accumulated the sales proceeds, rather than paying Mariel.

Between May, 2005, and September 7, 2005, Reder and Hinds negotiated a resolution of the alimony obligation.  Reder and Hinds prepared a settlement agreement, under which, _inter alia_, Defendant was to pay $239,178.42 to Plaintiff and Plaintiff was to execute a release.

During the time Reder and Hinds were negotiating, and after Defendant had contacted Anderson to seek legal advice regarding the filing of bankruptcy petitions for himself and Pet Care, Defendant and his wife, Patricia Wendt, traveled to Spain and Italy.  Defendant's credit card records indicate that Defendant paid for hotel and restaurant bills, as well as airline tickets.  Defendant testified that his wife maintains separate finances, and reimbursed him for the cost of the hotels during the trip.  Defendant testified that the purpose of the trip was to visit the son of Defendant's wife, from a previous marriage.

On August 19, 2005 and September 7, 2005, Defendant obtained two cashier's checks, in the amounts of $210,850.00 and $28,328.42, respectively, made payable to Plaintiff. Reder delivered the two checks to Hinds on September 7, 2005.

On September 14, 2005, Plaintiff signed the settlement and release agreement. (Docket No. 6). She testified that, on the same date, she received the two cashier's checks, totaling $239,178.42. She testified that she delivered the release to Defendant on the same date.

On September 15, 2005, one day after Defendant received the release, Defendant filed petitions under Chapter 7 of the Bankruptcy Code on behalf of himself, individually, and Pet Care, Inc.

Plaintiff testified that she would not have executed the release of Defendant's alimony obligations, if she had known he intended to file bankruptcy petitions for himself and Pet Care the next day.

On November 17, 2005, Ronald J. Sommers, the Chapter 7 Trustee for the bankruptcy estate of Pet Care, Inc., filed suit against Plaintiff, in Adversary No. 05-3824, seeking recovery of the $239,178.42 paid to Plaintiff on September 14, 2005 as a preference, pursuant to 11 U.S.C. § 547.

On April 17, 2007, Plaintiff and Sommers, as Trustee in the Pet Care case, entered into a settlement of the preference

adversary proceeding.  The settlement called for entry of an agreed final judgment against Plaintiff to recover the $239,178.42 transfer, and provided for Plaintiff to satisfy the judgment through the transfer of cash, securities, and the waiver of the right to file an unsecured claim in the Pet Care estate. Plaintiff testified that the cash and securities, valued at approximately $149,000, were turned over to the Pet Care bankruptcy estate.

In the instant adversary proceeding, Plaintiff seeks the denial of a discharge to Defendant, or alternatively seeks a determination that Defendant's debt to Plaintiff is excepted from discharge.  Plaintiff asserts that Defendant engaged in a scheme to defraud Plaintiff of her nondischargeable alimony obligation by inducing her to execute and deliver a release to Defendant, knowing that the consideration Plaintiff received for execution of the release would be recovered by the Chapter 7 Trustee for Pet Care.  Plaintiff seeks relief under Sections 523(a)(2), 523(a)(4), 523(a)(5), 523(a)(6), and 727(a)(4)(C) of the Bankruptcy Code.

Defendant denies that he engaged in such a scheme, and asserts that he believed Plaintiff had a perfected security interest in the assets of Pet Care, and that Plaintiff signed the release with full knowledge of both the financial condition of Defendant and Pet Care and the impending bankruptcy cases.

Defendant testified regarding his mental state between May, 2004, when he suffered a stroke, and September, 2005, when the Chapter 7 petitions for Defendant and Pet Care were filed. At varying times, Defendant testified that he did not remember consulting with either Reder or Anderson, that he did not recall signing the petition or schedules for Pet Care, that he never discussed with Anderson the dischargeability of his alimony obligations, and that he never authorized Reder to negotiate a lump sum settlement of his alimony obligations.  He testified that he has made no decisions regarding his business affairs since 2004.  At the same time Defendant claims that he was not making decisions regarding his business affairs, he was entering into a sophisticated scheme to buy and sell non-prescription drugs that the manufacturer required to be bundled with prescription drugs, and was retaining the proceeds of those sales in order to make a lump sum payment to Plaintiff.  Despite Defendant's claims that he was unable to make business decisions, he testified that he never notified the entities which regulate the practice of veterinary medicine of his lack of capability. During the time that Defendant was contemplating filing Chapter 7 petitions on behalf of himself and Pet Care, Defendant and his wife took a vacation in Spain and Italy.  Defendant's testimony indicates a selective memory, an ability to recall the facts when he believes they support his legal theory, and to forget the

facts when he believes they are detrimental to his legal theory. The court finds that Defendant's testimony as to his mental state at any time from May, 2004, through September, 2005, is generally not credible.

### Conclusions of Law

The plaintiff in a nondischargeability action bears the burden of proof by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt is nondischargeable if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

For a debt to be nondischargeable as a result of false representations under § 523(a)(2)(A), the creditor must show "(1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party[ ]." RecoverEdge L.P. v. Pentecost, 44 F.3d 1284 (5th Cir. 1995).

Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another-something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove

8

that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." Id.

An intent to deceive may be inferred from reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation. In re Acosta, 406 F.3d 367 (5th Cir. 2005).

When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an overt act is not required. In re Mercer, 246 F.3d 391 (5th Cir. 2001).

In the instant case, Defendant had a duty to disclose his intention to file Chapter 7 cases on behalf of himself and Pet Care when he was negotiating a release of his alimony obligations. Defendant's silence constitutes a knowing false representation as to current facts, on which Plaintiff relied. The court concludes that Defendant's debt to Plaintiff is excepted from discharge pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, both under "false representation" and "actual fraud" theories.

Section 523(a)(4) provides that a debt is nondischargeable if it is for fraud or defalcation while acting

in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4).

For a debt to be found nondischargeable under 11 U.S.C. § 523(a)(4), the trust for which the debtor is a fiduciary must be an express or technical trust. Texas Lottery Comm'n v. Tran, 151 F.3d 339 (5th Cir. 1998).

In the instant case, Plaintiff presented insufficient evidence of an express or technical trust. The court concludes that Plaintiff failed to meet the burden of proof as to nondischargeability under Section 523(a)(4).

Section 523(a)(5) of the Bankruptcy Code provides that a debt for alimony, maintenance, or support is nondischargeable. 11 U.S.C. § 523(a)(5).

Whether a particular obligation constitutes alimony, maintenance, or support within the meaning Section 523(a)(5) is determined by examining the nature of the debt at the time it was created. The circumstances of the parties subsequent to the entry of a divorce judgment is irrelevant to the inquiry into whether the obligation constitutes alimony, maintenance, or support. Swate v. Hartwell (In re Swate), 99 F.3d 1282 (5th Cir. 1996).

The intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or maintenance within the

meaning of Section 523(a)(5). <u>In re Evert</u>, 342 F.3d 358 (5th Cir. 2003).

Defendant argues that the alimony debt was extinguished by execution of the release, and thus, there was no alimony debt on the petition date. Defendant also asserts that there was a failure of consideration by Plaintiff, because Plaintiff did not perform nonmonetary obligations under the release agreement. Defendant's testimony on the issue of consideration was not credible and is not supported by the facts.

In the instant case, the parties unambiguously agreed that the debt created in the divorce decree was to be a debt for alimony. Debtor's subsequent prepayment of his obligations under the agreement (together with the reversal of the prepayment in the preference adversary proceeding) does not change the debt from its original character as alimony. The court concludes that Defendant's debt to Plaintiff is excepted from discharge pursuant to Section 523(a)(5) of the Bankruptcy Code.

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt incurred for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6).

The word "willful' in Section 523 (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or

intentional act that leads to injury.  Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998),

An injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm.  Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598 (5th Cir. 1998).

In the instant case, there is no proof of a subjective motive to cause harm.  Thus the question of whether the debt is excepted from discharge pursuant to Section 523(a)(6) depends on whether there was an objective substantial certainty of harm.  In the instant case, Defendant consulted with Anderson regarding the nondischargeability of the alimony debt, then proceeded to negotiate a lump sum payment, knowing that it would be avoided as a preference when he and Pet Care filed Chapter 7 cases.  The court concludes that Defendant's actions produced an objective substantial certainty of harm to Plaintiff's and Plaintiff's property.  The court concludes that Defendant's debt to Plaintiff is excepted from discharge pursuant to Section 523(a)(6) of the Bankruptcy Code.[2]

---

[2] Defendant asserts that he believed Plaintiff had a perfected security interest in all the assets of Pet Care, and that his lack of awareness of the unperfected nature of Plaintiff's purported security interest thus renders the debt dischargeable.  This argument is unavailing, because it depends on Defendant's testimony regarding his mental state, which the court finds not credible.

A Plaintiff seeking denial of the Debtor's discharge bears the burden of proof by the preponderance of the evidence. Matter of Beauboeuf, 966 F.2d 174 (5th Cir. 1992).

Section 727(a)(4)(C) of the Bankruptcy Code provides:

The court shall grant the debtor a discharge, unless –

(4) The debtor knowingly and fraudulently, in or in connection with the case -

> (C) Gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act.

11 U.S.C. § 727(a)(4)(C).

In In re Ledvinka, 144 B.R. 188 (Bankr. M.D. Ga. 1992), the former spouse of the debtor sought denial of the debtor's discharge, on grounds she gave up her rights to alimony pursuant to a prepetition separation agreement, which gave her a property interest in the debtor's retirement account. The court held that a prepetition agreement was not given "in or in connection with the case," so as to trigger the application of Section 727(a)(4)(C).

This result is in consonance with the purpose of Section 727(a)(4)(C), to address the potential for the efforts of a debtor to subvert the bankruptcy process itself, as differentiated from the seeking of an advantage with respect to a particular claim.[3]  See In re Lindemann, 375 B.R. 450 (Bankr.

---

[3] The court notes that, Plaintiff's broad reading of Section 727(a)(4)(C) would deny a discharge to most debtors who gave a

13

N.D. Ill. 2007), <u>citing</u> Collier on Bankruptcy ¶ 727.06 (15th ed. rev. 2007).  The court concludes that Plaintiff has failed to meet the burden of proof as to denial of discharge under Section 727(a)(4)(C) of the Bankruptcy Code.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on November 20, 2007.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

---

preference to a creditor.